IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CLARENCE MOORE | § | |
| v. | § | CIVIL ACTION NO. 6:23cv34 |
| CAPTAIN SHAY, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Clarence Moore, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and Local Rule CV-72 of the Local Rules of Court for the Eastern District of Texas. The named Defendants are Captain Brennan Shay, Sgt. Brandon Brewer, Sgt. Tavera (identified by Plaintiff in his complaint as "Sgt. Tavelaz,") Officer Justin Jones, Officer Jesse Velasquez, Officer D. Hanson, Chief Warden J. Garcia, and Deputy Warden D. Lane; of these, a Report has previously issued recommending dismissal of Warden Garcia.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 9) is the operative pleading in the lawsuit. In his amended complaint, Plaintiff states that on February 8, 2022, in the Coffield Unit B Pod 3 Row dayroom, Captain Shay and his subordinates detained Plaintiff for allegedly possessing contraband. Plaintiff pushed another inmate and was immediately struck in the face by Sgt. Tavera. Plaintiff states that the sergeant continued to hit him until he had "beaten Plaintiff to the floor."

Once Plaintiff was on the floor, he says that Hanson, Jones, Velasquez, and Brewer held him face down and continued to beat him in the face, head, and back. He states that he was handcuffed

1

behind his back. Captain Shay did nothing to intervene or stop the assault, and when an officer named McLeod tried to intervene, Captain Shay prevented him from doing so.

Afterwards, Plaintiff states that he was seen by medical personnel and told that he would need outside medical care for his injuries. He says that both of his eyes were closed shut and he was bleeding profusely from the head and face. He also received a two inch gash in the back right side of his head. When Warden Lane showed up, the medical staff told him that Plaintiff needed outside medical care, and Lane spoke to Captain Shay but did nothing to help.

Plaintiff states that he was taken to segregated housing and "forced to suffer with his injuries on his own." He was dizzy and threw up for two days straight, and could not breathe properly. He complained to officers and through inmate request forms but to no avail.

On February 15, 2022, Plaintiff filed a grievance requesting an investigation by the Office of the Inspector General. The grievance was investigated by Unit Grievance Investigator Lavery. However, Plaintiff complains that Warden Garcia reviewed Lavery's report and a statement made by Officer McLeod, and viewed the video, but did not intervene or submit the grievance to the Office of the Inspector General. Plaintiff then filed a Step Two grievance, and this was submitted to the Office of the Inspector General for an investigation.

As a result of the incident, Plaintiff states that he suffers "blinding headaches" for days at a time, for which he only receives pain pills. He also suffers from dizziness and back pains, but he is forced to sleep on the top bunk. He also suffers anxiety attacks, nightmares, and depression.

In Step One grievance no. 2022063942, attached to his original complaint (docket no. 1-1, p. 1), Plaintiff stated that Officers Jones, Hanson, and Velasquez, and the rest of the "goon squad" used excessive force to brutally beat him, while Captain Shay did nothing to abate the attack. He claimed that the use of force was not warranted or justifiable. The response to the grievance, dated June 6, 2022, says that a copy of the grievance had been forwarded to the Office of the Inspector General, which determined not to open a case.

In his Step Two appeal of this grievance (docket no. 1-1, p. 3), Plaintiff complains that the officers involved have not been held accountable for their actions. He says that the video of the incident has been preserved and that the actions of the officers in hitting him in the head and face while he was handcuffed can not be justified. The response to this grievance appeal, dated August 24, 2022, was that the allegation has been forwarded to the Office of the Inspector General and it has been assigned case no. 2200002039.

In Step One grievance no. 2023009469 (docket no. 1-1, p. 5), Plaintiff says that he has not received a response to his Step Two grievance appeal. He also says that he is over 50 years old and has acute headaches and back pain resulting from the incident, and is being refused medical care. The response to this grievance, signed December 14, 2022, says that Plaintiff transferred to the Huntsville Unit in March of 2022 and on May 4. 2022, he filed a sick call to see a provider for complaints of continued headaches, nosebleed, and back pain, and requested refills of ibuprofen. He was scheduled with nursing on May 11 and referred to the provider. He saw the unit provider the next day and was given ibuprofen and nasal spray. Plaintiff then filed sick call requests complaining of headache and back pain on July 12, September 12, October 21, October 24, October 26, November 3, and November 8, 2022. He was scheduled to see the provider multiple times and saw a provider on December 9 for an ibuprofen refill. His medication had already been refilled and so the provider ordered labs and a followup exam in January of 2023.

## II. The Defendants' Motion for Summary Judgment and Plaintiff's Response

The Defendants have filed a motion for summary judgment asserting that Plaintiff's injuries were *de minimis* and that the use of force was not malicious and sadistic, but was done in response to Plaintiff's assaulting another inmate in the dayroom. The Defendants also invoke their entitlement to qualified and Eleventh Amendment immunity. The Defendants have provided video of the incident, which Plaintiff has had an opportunity to view.

In his response to the motion for summary judgment, Plaintiff says that the video footage he watched in the office on February 9, 2022, is not the same video which was submitted to the Court.

It is not clear what video he is talking about which he allegedly watched the day after the incident; as discussed below, Plaintiff claims that he was interviewed on February 9 by investigators from the Office of the Inspector General, but the records furnished by the Defendants do not show that the incident was referred to that office until several months later. Plaintiff was provided the opportunity to view the videos submitted to the Court and did so on November 6, 2023. Docket no. 55, p. 2.

Plaintiff further says in his response that he was hit in the head, back, and both sides of his face, he was held on the floor while being hit in the head and face repeatedly, and he could not breathe from the weight of the officers. He contends that this use of force was excessive and unnecessary once he was already restrained.

According to Plaintiff, the video shows that he was approached by Officer Tavera, who struck him several times in the face after Plaintiff had struck an inmate named Christopher Bell. However, he says that the use of force reports claim that he was first approached by Officer Jones, a large male who was the only black officer present. Plaintiff asserts that the video is consistent with his version of events rather than that of the Defendants.

Next, Plaintiff says that the Defendants claim he showed no signs of injury, but the video footage shows that there were two nurses in the hallway while he was being escorted. He says that the nurses recognized his injury and gave him "an askance look" [sic]. They then asked "what is this?" He says that the nurses were "taken aback" by his injuries.

During his questioning by the officers, Plaintiff says he told them that he did not hit an officer nor was he aggressive towards them. He states that he was afraid during the questioning because the defendant officers were present and says that no one suffered any injuries except for him, not even the inmate whom he allegedly assaulted.

Plaintiff says that the nurse who examined him, Deandra Martin, wrote that he had blunt force trauma to the face and head and that he complained of pain. He also states that Nurse Martin said he needed outside medical care for his injuries, but the officers ignored this and put him in seg housing to suffer from his injuries. Plaintiff complains that Warden Lane and Captain Shay denied

him proper medical care and that Warden Delapp violated his rights by denying his grievance, which had placed the warden on notice of a constitutional violation.

Plaintiff states that he did not receive a disciplinary case for his actions and denies being aggressive toward the officers, although he acknowledges assaulting another inmate. He contends that the Defendants were not justified in assaulting him, noting that he had no weapon.

According to Plaintiff, he was interviewed by investigators from the Office of the Inspector General (OIG) the day after the incident. He states that after reviewing the video, the investigators had him strip and took photos of his injuries. Plaintiff adds that they told him that the investigation "needed to remain under cover" and that once the investigation was complete, he would need to file charges against the defendants.

Plaintiff states that since the incident, he has suffered from headaches and back pain, and has an anxiety disorder. He says that the officers were acting under color of state law and violated both state law and TDCJ policies and argues that the Defendants' motion for summary judgment is not sufficient to dismiss his case.

### III. The Summary Judgment Evidence

The primary evidence in the case is the two videos. The surveillance video, which has no sound, is from a fixed camera on the wall. It shows the dayroom with inmates in it. One officer enters followed by a small group of others. They talk to Plaintiff and start to handcuff him. At 37 seconds into the video, Plaintiff jerks away from the officers and lunges at another inmate. The officers take Plaintiff to the floor and a struggle takes place. Plaintiff can be seen moving from the corner of the room to a spot under the window as the officers try to hold him down and keep him in place. Although Plaintiff states that the video shows an officer named Tavera striking him several times in the face, no such incident can be seen.

At 1:09 into the video, an officer appears to tell the inmates in the dayroom to leave. They do, and at 1:34, an officer guides them out the door. Other officers come into the dayroom. Plaintiff is secured and is escorted out of the dayroom.

The use of force video does have sound, and begins after Plaintiff is secured on the floor. Lt. William Mullins introduces himself and says that Plaintiff was subject to a use of force by staff. He states that the officers will take Plaintiff to the infirmary.

Plaintiff is helped to his feet and escorted down the hallway. He walks without apparently difficulty and appears calm. Blood is visible on his shirt. Plaintiff and the officers pass two females, apparently the nurses to whom Plaintiff refers. One says "what is this" but they glance at him and walk away without stopping; there is no indication that they were "taken aback" by his injuries as Plaintiff claims.

When they arrive at the infirmary, Plaintiff is taken to the ER. Plaintiff calmly tells the guards that he was not fighting the officers and that the inmate he attacked owed him money. Plaintiff explains that he has not seen the other inmate for a while. He denies hitting any officers, saying that he hit the other inmate.

Plaintiff is photographed and the nurse comes in, saying that she wants the use of force terminated so that she can conduct an examination. Plaintiff is taken to a holding cage and the officer says that the use of force will be terminated. He says that Plaintiff will have the right to complete a use of force statement. The video ends at that point.

According to the use of force report, Plaintiff was seen on surveillance video placing a cell phone under the bench. Officers Velasquez, Jones, and Henson went into the dayroom and Jones tried to place hand restraints on Plaintiff. He had secured Plaintiff's left hand when Plaintiff pulled away and lunged toward an inmate named Bell, striking Bell twice in the head. The officers pushed Plaintiff toward the ground in an attempt to keep him from assaulting Bell. Plaintiff's head struck the floor, causing lacerations and bruising. Plaintiff continued to pull away and Velasquez and Jones struck him in the upper torso in attempting to gain compliance. Plaintiff then complied and the officers secured the hand restraints.

Officer McLeod initiated the Incident Command System and Lt. Mullins and Officer Evelynn Lopez came to the scene. Officer Lopez began recording the use of force video and Lt.

Mullins gave a brief narration. Jones and Henson helped Plaintiff to his feet and escorted him to the infirmary. Lt. Mullins photographed Plaintiff's injuries. After Nurse Martin said she needed the use of force terminated, Plaintiff was taken to the holding cell. He was advised of his right to complete a use of force statement, and a form was given to him after the conclusion of the use of force; however, a notation appears on the form that Plaintiff refused to give a statement. (Docket no. 35-4, p. 21).

The injury report complete by Nurse Martin shows that Plaintiff sustained lacerations to his lips and bruising of his face, with one eye being closed. His nose was swollen and bloody and he had a 1.5 cm by .5 cm laceration above his eye. The wounds were cleaned with wound cleanser and normal saline. (Docket no. 35-4, p. 34).

**IV. Legal Standards and Analysis**

A. General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004); Fed. R. Civ. P. 56. If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.*, *citing Allen v. Rapides Parish School Board*, 204 F.3d 619, 621 (5th Cir. 2000).

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the defendant has shifted the burden to the plaintiff by properly supporting his motion

for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record which supports the challenged claims and articulate the precise manner in which the evidence supports the challenged claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Fifth Circuit has stated that "we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (*citing Scott v. Harris*, 550 U.S. 372, 381 (2007) (a court of appeals need not rely on the plaintiff's description of the facts where the record discredits such description but should instead consider "the facts in the light depicted by the videotape.")) *See also Amos v. Jefferson*, 861 F.App'x 596, 601 (5th Cir. 2021).

B. The Use of Force Claim

Plaintiff contends that the Defendants used excessive force on him. The core judicial inquiry in a prisoner's excessive force claim under the Eighth Amendment is whether the force was applied

in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The term "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury, or under circumstances which show an evil intent. The term "sadistically" means to inflict pain for one's own pleasure. *Douglas v. Owens*, 50 F.3d 1226, 1232-33 and n.13 (3rd Cir. 1995); *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998).[1]

Five factors are frequently used in making this determination, including (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9, *citing Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973) (not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights). The Court will examine these five factors as well as the core judicial injury.

1. The Extent of the Injury Suffered

The use of force video and the medical entry in the use of force report clearly show that Plaintiff suffered an injury, including bruising and lacerations to the face and a bloody nose. The first *Hudson* factor weighs in Plaintiff's favor.

There is no indication in Nurse Martin's entry that she believed Plaintiff required outside medical care, as Plaintiff claims she told him. Nor is there any notation of a complaint of back pain. Instead, the nurse wrote that Plaintiff complained of blunt force injuries to the face, documented Plaintiff's facial injuries and noted that his wounds were cleansed. (Docket no. 35-4, p. 33). While

---

[1] These definitions are also used in the Fifth Circuit's Pattern Jury Instructions - Civil Cases, 2020 ed., sec. 10.7 (p. 106).

9

the response to Plaintiff's later grievance documented the medical complaints he had filed (docket no. 1-1, p. 6), there was no indication that outside medical care was required or had been ordered.

### 2. The Need for the Application of Force

The surveillance video shows and Plaintiff does not dispute that he precipitated the incident himself by pulling away from officers attempting to restrain him and attacking another inmate. In *Waddleton v. Rodriguez*, civil action no. 2:15cv79, 2016 U.S. Dist. LEXIS 94759, 2016 WL 11473815 (S.D.Tex., April 26, 2016), *Report adopted at* 2016 U.S. Dist. LEXIS 93561, 2016 WL 3900784 (S.D.Tex., July 19, 2016), *aff'd* 750 F.App'x 248 (5th Cir. 2018), *cert denied*, 139 S.Ct. 2617 (2019), the plaintiff Marvin Waddleton was escorted out of the law library after having a dispute with the librarian. After stating he was being wrongly accused of misconduct, Waddleton kicked the library door and cursed the guards. When they approached the hallway to 11 Building, Waddleton refused to enter and pushed back toward the officers. He was told that failure to comply with orders would result in a use of force, but he continued to resist. The district court stated according to the video, "just as they pass through the chain gate to the 11 Building hallway, [Waddleton] pulls away from Sgt. Salinas, and Lt. Rodriguez orders Sgt. Salinas and Officer Olufolat to take Plaintiff to the ground." Waddleton's hands were cuffed in front of him during these events.

Based on the video, the district court concluded there was no evidence force was used maliciously and sadistically for the very purpose of causing harm. The court also determined the defendants were entitled to qualified immunity.

On appeal, the Fifth Circuit stated "the use of force was triggered by Waddleton's sudden movement away from the wall and towards the officers. Salinas and the other officers reacted by forcing Waddleton to the ground and restraining him." Although there was evidence indicating the use of force resulted in injury, the Fifth Circuit determined "as to the second and third [*Hudson*] factors, Waddleton's sudden movement created a need for the use of force and the relationship between the need for force and the amount of force used was appropriate."

The Fifth Circuit emphasized that "injury alone does not equate to excessive force" because "the issue is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain and restore discipline, or malicious and sadistically to cause harm," *citing Wilkins*, 559 U.S. at 37. Because four of the five *Hudson* factors weighed in favor of the defendants, and the video showed the force was applied in a good faith effort to restore discipline, the Fifth Circuit concluded that "Waddleton has not established a genuine issue of material fact as to whether this use of force violated his Eighth Amendment rights, and Salinas and the unserved defendants are entitled to qualified immunity." *Id.* at *255.

Similarly, in *McCoy v. Esquivel*, civil action no. 4:17cv763, 2018 U.S. Dist. LEXIS 116415, 2018 WL 3389702 (S.D.Tex., July 12, 2018, *aff'd* 798 F.App'x 818, 2020 U.S. App. LEXIS 9022 (5th Cir., March 20, 2020), the plaintiff Prince McCoy told Officer Esquivel he needed medical attention because he thought his blood sugar was low. Later that same morning, Officer Scott McCoy to the medical department and then to disciplinary court. After the hearing, McCoy again asked to go to the medical department because he thought his blood sugar was low. The medical personnel told Officer Scott they could not check McCoy's blood sugar because they did not have a machine at that time. Esquivel then told McCoy to go to his cell. McCoy stated he needed medical treatment and the officers would have to carry him up the stairs because he felt dizzy and faint. He was leaning against the wall at that time and Scott let go of his arm. McCoy dropped down into a crouching position. Both McCoy and Esquivel gave statements agreeing Esquivel assumed or perceived that McCoy's movement toward the ground was an attempt to pull away from the officers. Esquivel took McCoy to the floor, causing a head injury.

In ruling on Esquivel's motion for summary judgment, the district court stated that "although McCoy contends that Esquivel did not need to restrain him because he was in a weakened state due to low blood sugar, McCoy does not show that Esquivel's actions were not designed to restore order and gain his compliance with the order to return to his cell." The court thus concluded McCoy did not raise a fact issue that the force used was done maliciously or sadistically to inflict pain rather

than in a good faith effort to restore discipline, nor did he raise a fact issue that Esquivel acted in an objectively unreasonable manner. Consequently, the district court granted the officer's motion for summary judgment.

On appeal, the Fifth Circuit stated that "having reviewed the summary judgment evidence, we agree with the district court that Esquivel's use of force was not unreasonable given McCoy's refusal to comply with orders and his downward movement," *citing Thompson v. Upshur County*, 245 F.3d 447, 456-57 (5th Cir. 2001).

In the present case, the video of the incident shows and Plaintiff's own statement show that Plaintiff pulled away from officers attempting to restrain him in order to assault another inmate. These actions - both the pulling away from the officers and attempting to assault another inmate in a crowded dayroom - plainly created a need for the application of force. *See, e.g.*, *Freeman v. Sims*, 558 F.App'x 412, 413 (5th Cir. 2014) (need for application of force where prisoner refused to comply with orders and displayed aggressive behavior). The second *Hudson* factor weighs heavily in favor of the Defendants.

3. The Relationship Between the Need and the Amount of Force Used

The summary judgment evidence shows a clear need for application of force, in that the officers had to restrain Plaintiff from assaulting inmate Bell. The surveillance video shows that the officers grabbed Plaintiff and threw him to the floor, where a struggle took place. This is consistent with the use of force report, which concluded that Plaintiff continued to try to pull away from staff and as a result was struck three times in the upper torso, and with Plaintiff's pleadings, which state that the officers struck him in the body. The third *Hudson* factor weighs in favor of the Defendants.

4. The Threat Reasonably Perceived by Prison Officials

In *Sneed v. Lira*, civil action no. 09-cv-2583, 2011 U.S. Dist. LEXIS 151230, 2011 WL 6998202 (S.D.Cal., November 3, 2011), the prisoner alleged that the guard attacked him without provocation during an escort back to his cell, but the defendants furnished summary judgment evidence showing the prisoner was yelling obscenities, refused direct orders, and lunged at the

officers. Although the prisoner claimed he was struck repeatedly, leading to significant injury, the only injury found was some swelling below his left eye. The district court concluded that the *Hudso*n factors regarding the need for the application of force and the threat reasonably perceived by the responsible officials weighed heavily in favor of the guards and granted the defendants' motion for summary judgment.

The summary judgment evidence here shows that Plaintiff pulled away from officers attempting to restrain him and assaulted another inmate. Such behavior plainly poses a threat and cannot be tolerated in a facility of incarceration. *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998); *Freeman*, 558 F.App'x at *413; *White v. Coffield Medical Staff*, slip op. no. 21-40211, 2-22 WL 1056103 (5th Cir., April 8, 2022). The injuries recorded were consistent with his having hit his head on the floor when the officers took him down. The fourth *Hudson* factor weighs in favor of the Defendants.

  5. Efforts made to temper the severity of a forceful response

This factor is inconclusive because while the placement on the floor was sufficient to cause Plaintiff's injury, it is unclear how much effort the Defendants were required to expend in order to quell Plaintiff's struggles and restrain him to the point that he could be taken to the infirmary. *See Maldonado v. Brock*, civil action no. 5:17cv157, 2020 U.S. Dist. LEXIS 124143 at *22, 2020 WL 5922020 (E.D.Tex., April 23, 2020), *Report adopted at* 2020 U.S. Dist. LEXIS 123236 (E.D.Tex., July 14, 2020); *Rios v. McBain*, civil action no. 5:04cv84, 2005 U.S. Dist. LEXIS 33823 at *15, 2005 WL 1026023 (E.D.Tex., March 21, 2005), *Report adopted at* 2005 U.S. Dist. LEXIS 33820, 2005 WL 1026192 (E.D.Tex., April 28, 2005).

  6. The Core Judicial Inquiry

The Supreme Court explained that the "core judicial inquiry" is whether the force was used in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 7. The videos and the summary judgment evidence consistent with the videos do not show that the Defendants intentionally acted without just cause or excuse,

with an intent to inflict injury, or under circumstances which show an evil intent, nor that they acted to inflict pain for their own pleasure. On the contrary, the summary judgment evidence shows that the Defendants acted in a good faith effort to restore the discipline breached by Plaintiff's actions in pulling away and assaulting another inmate. *See Brown v. Vasquez*, 699 F.App'x 335, 2017 U.S. App. LEXIS 20720, 2017 WL 4785956 (5th Cir., October 23, 2017) (the fact that force was required at all was due to prisoner's repeated failure to comply with orders and his resistance to the extraction team's efforts to restrain him once they entered his cell); *Funari v. Warden*, 609 F.App'x 255, 2015 U.S. App. LEXIS 12224, 2015 WL 4231669 (5th Cir., July 14, 2015) ("that force was required at all was due to Funari's repeated failure to comply with orders and his continued resistance to the officers once they entered his cell.")

Plaintiff recounts a number of hearsay statements various people allegedly told him, but these do not advance his cause. He says that the nurse told him he needed outside medical care, but these is no indication of any such need in the medical report or in the grievances which Plaintiff attached to his original complaint. He also says that he was interviewed by investigators from the Office of the Inspector General the day after the incident who told him that he needed to file charges against the Defendants, but the use of force report was not completed until months later and it makes no mention of an OIG interview; in fact, the final outcome of the report does not select the option for a referral to OIG for an investigation. (Docket no. 35-4, p. 7). While the response to Plaintiff's Step Two grievance several months after the incident said that the Office of the Inspector General had opened a case, this does not explain how he could have been interviewed by OIG investigators the day after the incident took place.

Plaintiff also claims that the video shows an officer named Tavalez (identified by the Defendants in the motion for summary judgment as Sgt. Tavera), punching him in the face; however, the use of force report does not indicate that Sgt. Tavera was present or had any involvement with the incident, and the video does not show anyone punching Plaintiff in the face. Likewise, Plaintiff

14

asserts that Sgt. Brewer was present, but neither the video nor the use of force report show that Sgt. Brewer was present.

Although Plaintiff asserts that the video supports his version of events, in fact a review of the videos show that they confirm the conclusions of the use of force report. Because Plaintiff has failed to show that the Defendants acted maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline, his Eighth Amendment excessive force claim against them is without merit.

C. Other Claims

Plaintiff complains that Captain Shay failed to intervene to stop the assault upon him by the officers and that Captain Shay prevented Officer McLeod from intervening.[2] The Fifth Circuit has explained that an officer is liable for failure to intervene or bystander liability when that officer (1) knew a fellow officer was violating an inmate's constitutional rights; (2) was present at the scene of a constitutional violation; (3) had a reasonable opportunity to prevent the harm, but (4) chose not to act. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). Mere presence is not sufficient; rather, the court must consider whether the officer acquiesced in the alleged constitutional violation. *Id., citing Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013).

A claim of failure to intervene or bystander liability requires an underlying constitutional violation. *Griffin v. City of Sugarland*, 787 F.App'x 244, 245 (5th Cir. 2019), *citing Whitley*, 726 F.3d at 646. Because Plaintiff has not shown an underlying constitutional violation of excessive force, his claim of bystander liability against Captain Shay necessarily fails as well.

Plaintiff states that the medical staff told Warden Lane he needed outside medical care, but nothing was done. As noted above, nothing in the medical entry indicates that the nurse believed outside medical care was required, nor do the grievances which Plaintiff furnished contain any

---

[2]Officer McLeod's written statement says that he saw the scuffle and went to assist the officers, but saw that they had the matter under control and called an ICS. He then moved the other inmates out of the dayroom and down the run. The statement says nothing about trying to intervene on Plaintiff's behalf or being prevented from doing so.

reference to Warden Lane or to outside medical care. In any event, an order to send Plaintiff to an outside hospital would have to come from a medical provider, such as a physician or nurse practitioner, rather than from the warden. *See, e.g.*, *Haynes v. Assava*, civil action no. 6:16cv1136, 2019 U.S. Dist. LEXIS 30299 at *3, 2019 WL 945967 (E.D.Tex., January 9, 2019) (order given by physician's assistant to transport prisoner to free world hospital), *Report adopted at* 2019 U.S. Dist. LEXIS 29804, 2019 WL 937327 (E.D.Tex., February 25, 2019). Plaintiff does not allege, nor does the summary judgment evidence show, that a medical provider gave orders for treatment at an outside hospital. Plaintiff has failed to show that Warden Lane was deliberately indifferent to his medical needs by not having him sent to an outside hospital in the absence of an order from a medical provider to do so. *See Kopatz v. Doe*, civil action no. 5:22cv156, 2024 WL 2106572 (E.D.Tex., February 5, 2024), *Report adopted at* 2024 U.S. Dist. LEXIS 67097, 2024 WL 1597748 (E.D.Tex., April 12, 2024) (captain was not deliberately indifferent for not taking prisoner to an outside hospital when the physician whom the prisoner saw did not order such a visit), *citing Petzold v. Rostollan*, 946 F.3d 242, 251 n.41 (5th Cir. 2019). Plaintiff has not shown a constitutional violation in this regard.

Plaintiff complains that after being seen by the nurse, he was taken to segregated housing, where he states that he asked for medical help to no avail. He provides no particulars on who or how he requested such help. To the extent that this allegation is a separate claim for relief, Plaintiff has failed to show that any of the named Defendants had any personal involvement with this claim or were otherwise deliberately indifferent to his health or safety. *See Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (plaintiff must enunciate a set of facts illustrating the defendant's participation in the alleged wrong); *Petzold*, 946 F.3d at 248-49.

Next, Plaintiff contends that he filed a grievance which was investigated by the Unit Grievance Investigator, Officer Lavery. However, Plaintiff asserts that Warden Garcia did nothing to remedy the matter, nor did he submit the grievance to the Office of the Inspector General, even after reviewing Officer Laverty's report and the complaint by Officer McLeod. Plaintiff says that

the grievance was signed by Warden Garcia and returned to him on July 25, 2022. He then filed a Step Two grievance appeal on August 1, 2022, and this one was submitted to the Office of the Inspector General.

The Step One grievance identified by Plaintiff was signed by Warden Delapp, not Warden Garcia, and reflects that it was forwarded to the Office of the Inspector General, which declined to open a case. In any event, the Fifth Circuit has held that prisoners do not have a constitutionally protected liberty interest in having grievances or complaints resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014). The fact that the wardens did not take such action on Plaintiff's grievance as he believed appropriate is not a constitutional violation.

Plaintiff also complains that he still suffers from severe headaches but only receives pain pills. He also has feelings of dizziness and back pains, but has to sleep on the top bunk. He suffers from anxiety attacks, nightmares, and feelings of depression, and is now on high blood pressure medication.

To the extent that Plaintiff complains about the medical care he has received, he has not named any medical personnel as defendants in his lawsuit, and makes no showing that any of the named defendants are involved with his medical care. At the time he filed his original complaint, he was confined at the McConnell Unit in Beeville, Texas, and he fails to show how any of the named Defendants, who are officials at the Coffield Unit, are responsible for his bunk assignment at the McConnell Unit. These allegations do not set out any constitutional violations by the named defendants in this lawsuit.

D. Qualified and Eleventh Amendment Immunity

To the extent Plaintiff sues the Defendants in their official capacity for monetary damages, such claims are barred by the Eleventh Amendment. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

With regard to claims for monetary damages against them in their individual capacities, the Defendants invoke their entitlement to qualified immunity. The Defendants invoke their entitlement to qualified immunity. In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id.* We can analyze the prongs in either order or resolve the case on a single prong.

After explaining that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit went on to state:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id*.

*Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020); *Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) (when an official has asserted qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the

official's conduct). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014).

Plaintiff has not met his burden of overcoming the defense of qualified immunity or shown that any of the named Defendants violated any clearly established constitutional right of which a reasonable person would have known. Consequently, the Defendants are entitled to qualified immunity.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment (docket no. 35) be granted and the lawsuit dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.

An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 24th day of June, 2024.

19 _K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE